DANIEL J. GALLERY AND ROBERT B. CHITTENDEN, AS CO-ADMINIS-TRATORS WITH THE WILL ANNEXED OF THE ESTATE OF JOHN J. McCARTHY, DECEASED, AND DANIEL J. GALLERY, ROBERT B. CHITTENDEN AND MARION I. McCARTHY, TRUSTEES OF THE McCARTHY FAMILY TRUST, DATED MAY 22, 1928, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91196. Promulgated November 22, 1938.

*Forest D. Siefkin, Esq.,* and *Joseph W. Cummings, Esq.,* for the petitioners.

*R. F. Staubley, Esq.,* for the respondent.

1214

KERN: Respondent has determined a deficiency of $155,587.54 in Federal estate tax by including in decedent's gross estate the full stipulated fair market value (as of the day of decedent's death), $1,066,-791.67, of the corpus of a trust settlement made by decedent on May 22, 1928, for the benefit of himself, his wife, and three children. The grounds taken by respondent in his deficiency notice are that the transfer was made (1) in contemplation of death under section 302 (c), and (2) to take effect in possession and enjoyment at or after death, under section 302 (d) of the Revenue Act of 1926, as amended. The petitioners returned as part of the gross estate of decedent one-third of the amount of the trust corpus, on the ground, apparently, that decedent's control of one-third of the trust income during life justified the inclusion of a proportionate amount of the corpus in the gross estate, but now pray that the amount so paid, $28,591.05 be declared an overpayment and refunded.

1. We may take the broadest ground, contemplation of death, first, and dispose of that. The inducement clause of the trust indenture recites that the trust settlement was made since the settlor was "desirous of making proper provision for his family and giving them an immediate enjoyment of the property now owned by him." No testimony was adduced at the hearing, and we have only the stipulated facts and such inferences as we may draw from them. They set out "that the deceased, John J. McCarthy died in Chicago, Illinois, on July 21, 1935, at the age of sixty-five years. The deceased at the time of executing the trust of May 22, 1928, was in good health for a man of his years, and the execution of the trust was not prompted by any condition of body or mind, which would have led him to believe that death was imminent or near at hand, or that he expected to die within the reasonably distant future."

The trust instrument required the annual distribution of the trust income to the decedent's wife and his three children to the extent of four-sixths of the total, one-sixth being reserved to the decedent, and the last one-sixth to be accumulated or distributed by the trustees in their discretion, and might, upon the direction of the two other trustees (the decedent being himself a trustee) be paid to decedent. We think that these provisions support the declaration in the inducement clause that the trust was to make "proper provision for his family" and give them "immediate enjoyment of the property"; purposes which are associated with life and not with death. *United States* v. *Wells*, 283 U. S. 102; *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48; *Constance McCormick, Executrix*, 38 B. T. A. 308.

Nor do the stipulated facts point to any other conclusion. The Supreme Court, in *Wells*' case, *supra*, pointed out that it is "the thought of death, as a controlling motive prompting the disposition of property that affords the test." We can not well find the thought of death as the controlling motive here, when all we know is that the decedent at the time of the transfer was 58, was "in good health for a man of his years", and made the transfer without expecting death either as "near at hand" or as something "within the reasonably distant future." If the stipulation means anything, we think it must mean that the thought of death itself did not closely impinge on the decedent's consciousness at the time, but that, being 58, he knew that he could not live, say, more than 35 years more. The actual motive of the transfer is lacking then, except in so far as it may be inferred from all the circumstances. They indicate a motive connected with life; present provision for his family. We think that the dominant motive of death has not been proved, and that we can not infer the existence of such a controlling motive, as respondent would have us do, from decedent's age, from the size of the transfer (which, if excluded from the decedent's estate, would leave less than $15,000), or from the fact that the beneficiaries of the trust were the natural objects of the decedent's bounty. *Constance McCormick, Executrix, supra.* Nor does the fact that the benefit of the income and, later, of the corpus of the trust would continue after the settlor's death affect the conclusion. Cf. *Shukert* v. *Allen*, 273 U. S. 545. The transfer must have a direct relation to the death of the settlor, either by reason of his motive in making it or by reason of the time when its possession and enjoyment will become effective.

2. We pass then to respondent's contention that the transfer was to take effect in possession and enjoyment at or after death, under section 302 (c) of the Revenue Act of 1926. It is obvious that under the Supreme Court's decision in *May* v. *Heiner*, 281 U. S. 238, the

decedent's retention of control over one-third of the income for life would not bring the trust corpus in whole or in part within this section, and respondent confesses in his brief that the amendments to this section on March 3, 1931, and thereafter can have no retroactive application. *Hassett* v. *Welch*, 303 U. S. 303.

Respondent attempts, however, by an elaborate argument to show that the transfer was "intended to take effect as to the right to the possession or enjoyment at or after death" because death of any one of the children before that of the survivor of decedent and his wife might divest that child's interest; and argues that the transfer is not complete until the "succession" is complete; until, in other words, the beneficiaries' interest is indefeasibly vested. Respondent says therefore that "the only interest, if any, that may be properly excluded from the gross estate, from the standpoint of the transfer taking effect after death, is the interest in said four-sixths part of the trust corpus for the period of the life expectancy of decedent's widow, as of the date of decedent's death."

The short answer to this whole contention is that the Federal estate tax is a "transfer", not a "succession" tax; it is laid on the decedent's right to transfer his property at death, not on the heir's or devisee's right to inherit or take. The incidence of the two types of tax is wholly different in effect. See *Stebbins* v. *Riley*, 268 U. S. 137. To illustrate this profound difference we need cite only the Supreme Court's decision in *Nichols* v. *Coolidge*, 274 U. S. 531, in which in circumstances not dissimilar to those here a transfer in trust was considered and adjudged not taxable under the Federal estate tax, and the Court's decision in *Coolidge* v. *Long*, 282 U. S. 582, in which the same transfer was considered under the Massachusetts succession tax. The full discussion of the question in the latter case by the four dissenting judges makes comment unnecessary, but the earlier Massachusetts succession tax case of *Saltonstall* v. *Saltonstall*, 276 U. S. 260, illustrates the principle, and the later Massachusetts succession tax case of *Binney* v. *Long*, 299 U. S. 280, confirms the difference in the nature of the two classes of taxes. If the gift has passed out of the hands of the settlor and is beyond recall from the beneficiaries named, the Federal estate tax will not concern itself with whether or when the gift shall vest indefeasibly in the beneficiary.

The fact that there have been written into the procession of Federal estate tax statutes enacted since 1916 provisions which recognize the substance of control which a power may exercise over even fully executed, as well as over executory, transfers by no means affects the principle, as respondent appears to think, that the Federal estate tax is laid on the transfer from the dead to the living, and not on the receipt by the living from the dead, of the property passing. Such are the pro-

visions dealing with the powers of revocation and of appointment. They require, to escape taxability, only that the donor shall have completely loosened his grip on the thing before death, not that the heir's or devisee's hold shall have been made fast.

3. We turn now to respondent's final contention, that the transfer to the extent of one-fifth was intended to take effect at or after death under section 302 (c) and (d), since the decedent, it is said, had a right to revoke the trust and revest so much of it in himself. The relevant portion of section 302 (d) is as follows:

To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend or revoke * * *.

Article 1 of the trust constituted the decedent, his wife, and R. B. Chittenden, who was not a beneficiary, trustees. Article 2 gave the trustees "every power, right and privilege with respect to the trust property enjoyed by the prior owner not inconsistent with the specific terms of the trust." The same article further provided that "the powers of the trustees hereunder may be exercised upon the consent of the majority of them." Article 5 provided that "the trust may be altered or amended in any of its provisions, except that no change shall operate to revest title to more than one-fifth of the principal of the trust estate in John F. McCarthy * * *." The power in the decedent to control until his death one-fifth of the trust corpus is, therefore, obvious and comes within the language of the statute which speaks of a power to alter, amend, or revoke exercisable "either by the decedent alone or in conjunction with any person."

Petitioners, in their contention that the one-fifth of the property transferred to the trust was not includable in the gross estate, pursuant to section 302 (d), rely strongly on the case of *White* v. *Poor*, 296 U. S. 98. However, that case differs from the instant case in that there the trust instrument did not contain any power to revoke, amend, or alter the trust, but merely provided that the trustees should have the power to terminate the trust, and in that there the settlor became a trusteee having, together with the other trustees, the power of terminating the trust, not by virtue of any provision in the instrument by which she had created the trust, but by virtue of her election as trustee to fill a vacancy caused by the resignation of one of the original trustees designated by the settlor, the election being made by the surviving trustees with the approval of all of the beneficiaries. In the instant case the trust instrument, as we have pointed out, provided that the trustees should have the right to amend and alter, and further provided that the settlor should be one of the trustees,

pursuant to which provision the decedent did act as trustee. Therefore, the case of *White* v. *Poor, supra,* is not authority for the petitioners' contention in the instant case. The case of *Helvering* v. *City Bank Farmers Trust Co.,* 296 U. S. 85, is in point, and the broader principles stated in that case should apply here.

The case of *Reinecke* v. *Smith,* 289 U. S. 172, although dealing with an income tax problem arising under another section of the revenue acts, contains reasoning which, by analogy, supports our conclusion.

The trust corpus, to the extent of the one-fifth portion revocable by the decedent jointly with one of the two other trustees, was properly includable in decedent's gross estate.

We hold, therefore, that there was an overpayment to the extent that the tax originally paid exceeds the tax due as computed in accordance with our opinion.

*Decision will be entered under Rule 50.*