**WELCH, Collector of Internal Revenue, v. TERHUNE et al.**

No. 3740.

Circuit Court of Appeals, First Circuit.

March 23, 1942.

Bernard Chertcoff, Sp. Asst. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S.

Atty., both of Boston, Mass., for appellant.

·Frank ·H. ·Harding, Carpenter, Nay, Caiger & ·Harding, all of Boston, Mass., for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

William L. Terhune died on February 23, 1936. His executors brought this action in the court below for the recovery of an alleged overpayment of estate taxes made pursuant to a determination by the Commissioner that the corpus of a certain trust which had been set up by the decedent during his lifetime was includible in his gross estate. The district court gave judgment for the plaintiffs.

The trust was created by two indentures executed on May 6, 1929, conveying to trustees the principal portion of the decedent's property. Terhune was then 79 years of age and was contemplating a second marriage. His object in creating the trust was so to arrange his affairs that no friction would develop between his children and the intended second wife who was their junior in age.

Terhune, his son, and his son-in-law were the three named trustees. It was provided that during his lifetime Terhune should be the active trustee, with broad powers of management. However, he was empowered to delegate his active authority to any of the other trustees. Also, he reserved the power to appoint a fourth trustee at any time after June 10, 1929. Vacancies in the office of any trustee might be filled by appointment in writing by Terhune and his three children. Any successor trustee, upon qualifying, would thereupon "become a co-trustee under this indenture with all the powers of an original trustee."

Under the dispositive provisions of the trust, the net income was to be paid to the grantor during his lifetime. At his death a quarter share of the net income was to be paid for a period of ten years to each of his three children and to his second wife. The quarter share payable to the wife was to cease if she died or remarried within the ten-year period subsequent to the decedent's death. In that event, her share of the income was to be divided among the grantor's three children (with gifts over to their children by right of representation, in case of the

death of any of such children). At the end of the ten-year period the trustees were directed to pay specific amounts to six named grandchildren of the decedent. Provision was made for gifts over to the parents, brothers or sisters, or issue of any of the named grandchildren who should die prior to the time for payment of the specific gifts. The remainder of the corpus was then to be divided into four equal shares, one of such shares to be paid forthwith to each of the decedent's children (with gifts over to the heirs of their bodies). The fourth quarter share was to be held in trust for the decedent's second wife, the income to be paid to her until she died or remarried, in which event that share was to be distributed among the children of the decedent (with gifts over to the heirs of their bodies).

Clause 12 of the trust instrument contains a provision, vital to the determination of this appeal, reading as follows:

"This Trust may be terminated or amended at any time, but only with the written consent of the three Trustees herein named, and of any Trustee appointed by William L. Terhune under clause 14 hereof, or the survivors or survivor of them, and of the then surviving children of the said William L. Terhune."

The applicable revenue act is that of 1926. Section 302(d), 44 Stat. 71, 26 U. S.C.A. Int.Rev.Acts, page 228, provides that there shall be included in the computation of the gross estate of a decedent the value at the time of his death of all property:

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *"

In the Revenue Act of 1936, § 302(d) (1), was amended, 49 Stat. 1744, 1745, 26 U.S.C.A. Int.Rev.Code, § 811(d) (1). Though this amendment occurred after the death of Mr. Terhune, we shall have occasion later in this opinion to refer to the significance of certain changes thus made in the subsection. As amended in 1936 [our italics indicating added phrases] the subsection reads in part as follows:

"(d) (1) To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona-fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (*in whatever capacity exercisable*) by the decedent alone or by the decedent in conjunction with any other person (*without regard to when or from what source the decedent acquired such power*), to alter, amend, revoke, *or terminate*; or where any such power is relinquished in contemplation of decedent's death."

Coming back to § 302(d) as it stood in the 1926 Act, it is to be noted that the subsection does not say that the power must be reserved in the trust instrument to be exercised by the grantor in his capacity as grantor. No reference is made to the capacity in which the power is exercisable. The only requirement is that the enjoyment of the property theretofore transferred by the decedent must be subject at the date of his death to any change through the exercise by the *decedent* of the described power. This is emphasized by the House committee report on the same wording of § 302(d) of the 1924 Act, 43 Stat. 304, 26 U.S.C.A. Int.Rev.Acts, page 67. H.Rep.No.179, 68th Cong., 1st Sess., p. 28, states:

"Section 302(d): By this subdivision, if the decedent had the power at the time of his death to change the enjoyment of a property interest, which he had transferred; or with respect to which he had created a trust, such interest is to be included for estate tax purposes in his gross estate."

In this case the decedent did, at the time of his death, have a power to change the enjoyment of the property interests in the trust estate.

By the provision of Clause 12 of the indenture the trust "may be terminated or amended". The word "terminate" did not appear in § 302(d) of the 1926 Act. In the Revenue Act of 1936 this word was inserted, so that the power described in § 302(d) became one to "alter, amend, revoke, or terminate, * * *." H.Rep.No. 2818, 74th Cong., 2d Sess., p. 10, com-

menting on the addition of the word "terminate", said:

"In the case of White v. Poor, supra [296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80], the Supreme Court did not pass on the question of whether the power to terminate was included in the language relating to a power 'to alter, amend or revoke'. Since in substance a power to terminate is the equivalent of a power to revoke, this question should be set at rest. Express provision to that effect has been made and it is believed that it is declaratory of existing law."

Art. 20 of the Treasury Regulations No. 80 (1937 Ed.), states:

"The third change made in the subdivision by the Revenue Act of 1936 consisted of the addition of the words 'or terminate' following the words 'to alter, amend, revoke'. Such addition is considered but declaratory of the meaning of the subdivision prior to the amendment. A power to terminate capable of being so exercised as to revest in the decedent the ownership of the transferred property or an interest therein, or as otherwise to inure to his benefit or the benefit of his estate, is, to that extent, the equivalent of a power to 'revoke', and when otherwise so exercisable as to effect a change in the enjoyment, is the equivalent of a power to 'alter'."

In Mellon v. Driscoll, 3 Cir., 1941, 117 F.2d 477, certiorari denied 313 U.S. 579, 61 S.Ct. 1100, 85 L.Ed. 1536, a power to terminate was held to fall within § 302(d) of the 1926 Act.

■ In the trust instrument there was also given the power to "amend". The plaintiffs contend that this power must be strictly construed so as to refer only to the minor changes in the mechanics of the operation or management of the trust and not to permit any amendment which would materially vary the respective property interests of the beneficiaries. There is nothing in the text of the trust instrument to indicate that the word "amend" as therein used was to have such an unusually restricted meaning. See Dort v. Helvering, 1934, 63 App.D.C. 98, 69 F.2d 836, 840, 841, certiorari denied 293 U.S. 569, 55 S.Ct. 80, 79 L.Ed. 668.

■ We are sure that these powers to terminate or amend, taken in conjunction, would authorize changes to be made in the enjoyment of the property interests at least as broad as those we held sufficient in Chickering v. Commissioner, 1 Cir., 1941, 118 F.2d 254, certiorari denied 62 S.Ct. 70, 86 L.Ed. ——. And see Commissioner v. Chase National Bank, 2 Cir., 1936, 82 F.2d 157, certiorari denied 299 U.S. 552, 57 S.Ct. 15, 81 L.Ed. 407. How much further these granted powers might extend we need not now inquire.

It does not matter that the power retained by Terhune could be exercised only in conjunction with the other trustees and with certain of the persons beneficially interested in the trust estate. Helvering v. City Bank Farmers Trust Co., 1935, 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62.

Nor does it matter that the trust instrument vested the power in Terhune in his capacity as a trustee named in the instrument rather than in his capacity as grantor. As previously noted, § 302(d) refers to the existence of the power in the decedent, not to the capacity in which it is to be exercised. So far as we can see, nothing turns on whether the power now in question is to be described as a fiduciary or non-fiduciary power. It is enough that the grantor had retained in his hands a power, whether alone or in conjunction with others, to vary materially the enjoyment of the numerous property interests.

As a matter of fact, the power is probably not in a strict sense a fiduciary power. In Reinecke v. Smith, 1933, 289 U.S. 172, 53 S.Ct. 570, 571, 77 L.Ed. 1109, the grantor, Douglas Smith, created a trust for the benefit of his wife and four children. The trustees named were the grantor, a son who was also a beneficiary of the trust, and a trust company. There was a provision that the trust might "be modified or revoked at any time by an instrument in writing signed by Douglas Smith * * * and either one of the other two trustees or their successors". The question was whether the income of the trust was taxable to the grantor under the provision of § 219(g) of the Revenue Act of 1924, 43 Stat. 277, 26 U.S. C.A. Int.Rev.Acts page 31, providing that "Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing

the net income of the grantor." The income was held taxable to the grantor. In its opinion the Court said (289 U.S. pages 176, 177, 53 S.Ct. page 572, 77 L. Ed. 1109):

"In approaching the decision of the question before us, it is to be borne in mind that the trustee is not a trustee of the power of revocation and owes no duty to the beneficiary to resist alteration or revocation of the trust. Of course he owes a duty to the beneficiary to protect the trust res, faithfully to administer it, and to distribute the income; but the very fact that he participates in the right of alteration or revocation negatives any fiduciary duty to the beneficiary to refrain from exercising the power. The facts of this case illustrate the point; for it appears the trust in favor of the grantor's wife was substantially modified, to her financial detriment, by the concurrent action of the grantor and the trustees. This case must be viewed, therefore, as if the reserved right of revocation had been vested jointly in the grantor and a stranger to the trust."

See also Witherbee v. Commissioner, 2 Cir., 1934, 70 F.2d 696, 697, certiorari denied, 293 U.S. 582, 55 S.Ct. 96, 79 L.Ed. 678; Carkhuff v. Commissioner, 6 Cir., 1936, 83 F.2d 626, 627, 106 A.L.R. 796, certiorari denied 299 U.S. 568, 57 S.Ct. 31, 81 L.Ed. 418.

White v. Poor, 1935, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80, was a peculiar case. There the settlor conveyed property to three trustees, one of whom was herself. It was provided that the trust might be terminated at any time either in whole or in part "by the person or persons who shall then be trustees hereunder". A year later the settlor resigned as trustee and her daughter was appointed to fill the vacancy. Afterwards the daughter resigned and the settlor was reappointed trustee under a clause of the trust instrument providing that vacancies could be filled by the remaining trustees with the approval of the beneficiaries. The settlor then continued as a trustee until her death. One of the alternative grounds upon which the majority opinion was rested was that the power which the settlor had at the date of her death did not fall within the terms of § 302(d) of the applicable Revenue Act of 1926. The significant and distinguishing fact in the case was, that when the settlor resigned as trustee she

thereby cut the last thread of power which she held over the various property interests created by the trust instrument. The reacquired power she had at her death was not a power retained by her in the original declaration of trust but was given to her "solely by virtue of the action of the other trustees and the beneficiaries". The case at bar presents a different situation; here the decedent at the time of his death retained the original power which he had vested in himself at the time of the creation of the trust. We agree with the reasoning of the Board in Daniel J. Gallery v. Commissioner, 1938, 38 B.T.A. 1211, to the effect that White v. Poor, supra, is not a controlling authority in such a case as here presented.

The House committee report (H.Rep. No.2818, 74th Cong., 2d Sess., pp. 9–10), in explanation of the 1936 amendments to § 302(d), after discussing the holding in White v. Poor, supra, said:

"The case, therefore, suggests that section 302(d) may be circumvented in many ways so long as the power to alter, amend, revoke, or terminate does not accrue to the settlor by virtue of the reservation in the trust instrument. It is, therefore, provided that section 302(d) covers a power whether created at the time of transfer or thereafter arising from any source and whether exercisable in an individual or representative capacity. To some extent, it is believed this amendment is declaratory of existing law. To the extent that it is not so declaratory, it is prospective and will apply to transfers made after the date of enactment of the act."

Art. 20 of Treasury Regulations No. 80 (1937 Ed.), commenting on the 1936 amendments, reads:

"The addition to the subdivision, by section 805 of the Revenue Act of 1936, of the phrase to the effect that it is not material in what capacity the power was subject to exercise by the decedent or by the other person or persons in conjunction with the decedent, is considered as merely declaratory of the meaning of the subdivision prior to the addition of the phrase.

"The second phrase added by amendment in 1936 (namely, 'without regard to when or from what source the decedent acquired such power') is not considered declaratory of the meaning of the subdivision prior to the amendment in a case in which no one of the powers enumerated

in the subdivision was reserved at the time of the making of the transfer, but one or more thereof was conferred subsequent thereto (whatever the source from which conferred) without any understanding, express or implied, had in connection with the making of the transfer that such power or powers should be later conferred."

Thus the Congress and the Treasury have interpreted § 302(d) in the 1926 Act as covering a power retained by the decedent in the trust instrument, whether the power is exercisable by him as trustee or as grantor; and they have regarded White v. Poor, supra, as excluding the power from the purview of § 302(d) only when the power which the decedent had at the time of his death was not retained by him at the time of the making of the transfer, but was derived subsequently from some other source. This interpretation we regard as well justified by the language of § 302(d) of the 1926 Act, for the reasons we have previously indicated.

A final argument made by the plaintiffs is that the power to terminate or amend given in the trust instrument now before us was apparently to survive the decedent and to repose thereafter in the surviving and successor trustees. The suggestion is that nothing finally passed at the decedent's death, for the power to change the enjoyment of the beneficial interests remained in full force thereafter. But the statute draws no such distinction; the decedent had the described power at the time of his death and that is all the statute requires. While a power to amend may have remained in the surviving trustees after the death, the power of Terhune to amend did not, and that would seem to be the determining factor. *He* retained a string until his death; for that reason the property is includible in his gross estate. See Estate of John H. Storer v. Commissioner, 1940, 41 B.T.A. 1156. Section 302(d) as so applied presents no possible constitutional difficulty, at least where the transfer in trust occurred after the passage of the act, which was the case here.

In the view we take it is unnecessary to consider the Government's alternative contention that the trust property is includible in the decedent's gross estate under § 302 (c) of the Revenue Act of 1926, because the reservation by Terhune of the income for his own life made the transfer one "intended to take effect in possession or enjoyment at or after his death." See Paul, Federal Estate and Gift Taxation (1942) § 7.14.

The judgment of the District Court is reversed and the case is remanded to that court with direction to enter judgment for the defendant.