*770 OPINION.
SteRnhagen :
1. The Commissioner having determined that the gifts of February 1934, May 1934, and December 1935 were made in contemplation of death and therefore properly within the gross estate, the petitioner has undertaken to prove the contrary. The gifts were not made within two years prior to the death, so the statute does not require that they shall be deemed to have been made in contemplation of death. The Commissioner, however, has determined that to be the fact, and we are to say from the evidence whether the fact is shown to be otherwise.
The decedent did not discuss death, and upon the subjective fact as to whether, when he made these gifts, death was in his mind, the evidence is neutral. He never spoke of death, and, so far as anything he said discloses, it can not be known directly whether he thought of it when he made the gifts. The finding must be based upon circumstance and inference.
Were it not for the decedent’s advanced age and the’ cerebral hemorrhage of November 1933, with the resulting aphasia, there would! be nothing to suggest contemplation of death as the reason for the gifts. Each of them is explained upon its own grounds, without relation to death or taxes. The decedent had been making substantial gifts from time to time for many years, and they had not been in com templation of death. Except for the hemorrhage of 1933, there is no special circumstance to stamp these gifts differently from the earlier ones. The aphasia was not serious, and otherwise the decedent’s health was good.
The first of the gifts in question was made to the son in February 1934, when, because decedent got tired of holding and trying to sell the vacant and unproductive property in Chicago, he gave it to his son. It was worth $75,000, a comparatively small amount in his large fortune, and the explanation shown for the gift is plausible enough *771 to leave no reason to inquire for another, such as the thought of making a testamentary disposition or minimizing death taxes.
The gift to the daughter in May 1934 had been under consideration by the decedent ever since 1929, when he made the gift of Standard Brands shares to the son. The decedent wanted to equalize gifts to the two children, and he was stimulated to complete this plan by the fall in the daughter’s income, her dissatisfaction with her financial condition, and his desire to end recurring quarrels with her about money. This is an adequate explanation of the gift and it is not necessary to supplement it by a reference to its testamentary tax effect.
The gifts in May 1934 to the daughter-in-law and grandchildren are only explained as spontaneous acts of sentiment attributable to his affection for the son’s wife. He had wanted to make such a gift and had been dissuaded first by his wife and then by the son. There is no circumstance which explains these gifts other than a desire to give; but on the other hand there is nothing to suggest that they were prompted or hastened by the decedent’s thought of death.
The gift to the son in December 1935 was explained by the decedent himself, in the gift tax return and also in conversation, as actuated by the desire to make up for a shrinkage in the son’s income. There is no reason to find any other explanation than this, and nothing to suggest that the thought of death was present.
It must be remembered that the decedent was not giving away all or the larger part of his fortune when he made these gifts. He still had some $4,000,000 which would pass at his death. He was aware of the necessity of making a will, but be was in good health and refrained from doing so until March 1936, an indication that in 1934 and 1935 he was not engaged in making a testamentary disposition of his estate.
We are of opinion from the evidence as to the decedent’s health, habits, and motives, and the surrounding circumstances, that the gifts in question have been shown not to have been made in contemplation of death.
2. The Commissioner determined that the entire value of the decedent’s proportionate interest in the Chase & Sanborn employee trust was within his gross estate. The petitioner challenges this as a matter of law and argues that only so much may be included as is represented by the present value at the time of death of the future right to receive the distributive share of the trust upon its termination.
Section 302 (d) of the Revenue Act of 1926 requires the inclusion in the gross estate of any interest “of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment *772 thereof was subject at the date of his death to any change through the exercise of a powder, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke.” As to the decedent’s interest proportionate to his contribution, he had made a transfer by trust, and the enjoyment thereof was subject at the date of his death to a power exercisable by him in conjunction unanimously with the other trustees to alter, amend, or, indeed, revoke. By the express terms of the trust instrument, the trustees were given unlimited discretion and control of the choice of persons beneficiary. In their discretion they could entirely discontinue distributions at any time. Although paragraph 13, which gives such control, limits it by the proviso that a periodic payment once determined should be continued,, this proviso is emasculated by the succeeding clause, “unless the then trustees shall by unanimous vote otherwise determine.” Therefore,, if the trustees determine that all of the periodical payments should be discontinued, the income would all be distributable proportionately to the contributors. Thus the corpus would itself become unnecessary to carry out the functions of the trust and the entire amount would by the unanimous determination of the trustees be proportionately distributable to the contributors. As to the decedent, he thus had the power, in conjunction with another person, to alter, amend, or revoke the trust and take back his contribution thereto.
There is no significance in the fact that this power was reposed in him as a trustee, Welch v. Terhune, 126 Fed. (2d) 695, or that it affected the entire trust res — the contributions of the others as well as his own. As to his nwn contribution, the power to retake it was just as complete as if it were the entire trust property.
The Commissioner’s inclusion of the entire value ($245,515.53) of the property (2,512 shares) contributed to the trust by the decedent is sustained.

Decision will he entered under Rule 50.