ESTATE OF HARRY R. FRUEHAUF, DECEASED, NATONAL BANK OF DETROIT, HARRY R. FRUEHAUF, JR., AND THOMAS L. MUNSON, COEXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3484–66.   Filed September 24, 1968.

*E. James Gamble*, for the petitioners.
*Gary F. Walker*, for the respondent.

### OPINION

MULRONEY, *Judge:* Respondent determined a deficiency in the estate tax in the Estate of Harry R. Fruehauf, in the amount of $75,462.68.

Many issues have been resolved by stipulations and concessions. There is but one issue that is now for decision, namely, whether there should be included in decedent's gross estate the value of the proceeds of several insurance policies written on his life.

All of the facts have been stipulated and they are found accordingly.

The National Bank of Detroit, Harry R. Fruehauf, Jr., and Thomas L. Munson, are the duly appointed, qualified, and acting executors for the Estate of Harry R. Fruehauf, deceased. Harry R. Fruehauf died in Detroit, Wayne County, Mich., on April 29, 1962. The estate tax return in this case was filed with the district director of internal revenue, Detroit, Mich. The principal office and residences of the petitioners were Detroit, Mich., at the time the petition was filed.

During her life the decedent's wife, Vera Berns Fruehauf, applied for and received several insurance policies written on the life of the decedent. After the policies were issued to her she continued to be the owner of the policies until her death on February 17, 1961.

On the date of her death, the following policies were owned by Vera Berns Fruehauf on the life of the decedent, Harry R. Fruehauf:

| Policy | Face amount |
| --- | --- |
| Great West Life Assurance Co., policy No. 735,431 | $50,000 |
| Great West Life Assurance Co., policy No. 1,052,393 | 40,000 |
| Lincoln National Life Insurance Co., policy No. 607,277 | 25,000 |
| Lincoln National Life Insurance Co., policy No. 665,180 | 10,000 |
| New England Mutual Life Insurance Co., policy No. 1,675,751 | 60,000 |
| Manufacturers Life Insurance Co., policy No. 908,943 | 25,000 |

By the express provisions of the insurance policies, the ownership and control of each policy were to be possessed and exercisable solely by the applicant, Vera Berns Fruehauf, or her personal representatives, successors, and assigns.

Vera Berns Fruehalf paid all of the premiums on each of the above policies prior to her death. The original beneficiary of each policy was Vera Berns Fruehauf. In 1959 the beneficiary designation was changed on each policy so that Vera Berns Fruehauf was the primary beneficiary, and the secondary beneficiary in the case of her death was Harry R. Fruehauf, Jr., who was the only child of Vera and Harry Fruehalf. Each change of beneficiary was made upon the application of Vera Berns Fruehauf.

The will of Vera Berns Fruehauf gave all of her tangible personal property to her husband and the balance of her property to two trusts. In article Seventh, provision was made for the transfer of one-half of her remaining property to a trust, which provided that her husband was to receive all of the income and any amounts of principal that he might request in writing. It gave her husband the power of appointment over the corpus remaining in the trust and, in default of his exercising said power of appointment, it provided that upon the death of her husband the remaining corpus was to be paid to her son.

The second trust was created by article Eighth. The following are the pertinent provisions of the will with respect to the second trust:

EIGHTH : All the rest, residue and remainder of my estate of whatever kind and wherever situate, I give, devise and bequeath to the trustees hereinafter named to be held in trust for the following uses and purposes:

(1) To pay the entire net income from the corpus of the trust quarterly, or at such other intervals as he requests, to my husband, HARRY R. FRUEHAUF, so long as he lives.

(2) If at any time or from time to time during the life of my husband the trustees other than my said husband shall, in their sole and uncontrolled discretion, determine that the resources of my husband are insufficient to enable him to maintain the standard of living to which he was accustomed during the year preceding my death and such deficiency cannot be met out of the assets of any other trust of which my husband is a beneficiary, the trustees shall distribute to my husband such portion of the principal of the trust as shall, in the sole and uncontrolled discretion of the trustees other than my husband, be deemed sufficient to enable him to maintain such standard of living.

(3) Upon the death of my said husband, the entire remaining corpus of the trust shall forthwith be assigned, paid over, conveyed and distributed, free of trust, to my then surviving issue per stirpes.

NINTH : The trustees of each of the trusts established under this Will shall be my husband, HARRY R. FRUEHAUF, HOWARD B. KNAGGS, a resident of Grosse Pointe Farms, Michigan, and THE DETROIT BANK AND TRUST COMPANY of Detroit, Michigan. * * *

TENTH : My Executors and my trustees may retain for such periods as they determine advisable any insurance policies owned by me at my death on the life

of any other person, and pay the premiums on such policies whenever they become due out of income and/or principal as they shall see fit, and cause themselves to be designated as the beneficiaries thereof, or they may, at any time, sell and assign any of such policies to the person whose life is insured for the cash surrender value thereof, or they may surrender any of such policies for their cash surrender value, or they may, at any time, convert any of such policies into paid up policies in whatever amounts may be provided by the terms of such policies. With respect to any policies retained by them, they may arrange for the automatic application of dividends in reduction of premium payments and they may borrow on any of such policies, make premium payments from the funds so derived, and repay such loans. Upon the death of the person insured by any policies held by them, they shall take all necessary steps to collect the proceeds of such matured policies, including furnishing to the insurance companies the necessary proofs of death, executing and delivering any releases, receipts or other necessary papers, compromising or adjusting any disputed claim in such manner as they deem just, and bringing suit upon any policy, the payment of which is contested by the insurer, and paying the expenses thereof as they deem such action advisable. The insurance company issuing any of such policies shall not be required to see to the application or disposition of the proceeds of any such policies paid to my Executors or trustees.

ELEVENTH : In addition to the powers and authorities elsewhere granted in this Will, I empower the trustees of each of the trusts created hereunder to do everything they deem advisable even though it would not be authorized or appropriate for fiduciaries (but for this power) under any statutory or other rule of law, * * *

\* \* \* \* \* \* \*

THIRTEENTH : I nominate, constitute and appoint my husband, HARRY R. FRUEHAUF, HOWARD B. KNAGGS, and THE DETROIT BANK AND TRUST COMPANY of Detroit, Michigan, Executors of this Will. In the event of the death, resignation, or inability to act of my husband, I nominate, constitute and appoint my son, HARRY R. FRUEHAUF, JR., to serve in his place, and in the event of the death, resignation, or inability to act of Howard B. Knaggs, I nominate, constitute and appoint THOMAS L. MUNSON to serve in his place. I confer upon my Executors all the powers and authorities with respect to the management of my estate which I heretofore conferred upon my trustees with respect to the management of the trust estates, except for those which, by their terms, cannot be exercised during the period of administration.

FOURTEENTH : To the extent possible, all life insurance policies owned by me on the life of others, which are retained by my Executors, shall be assigned to the trustees of the trust created under Paragraph Eighth of this Will, rather than to the trustees of the trust created under Paragraph Seventh of this Will.

Decedent was one of the coexecutors for the estate of his wife and cotrustee-designate of both trusts created by her will.

At April 29, 1962, the date of decedent's death, no distribution to the trust provided for under article Eighth of the will of Vera Berns Fruehauf had been made by the coexecutors of her estate. Neither Harry R. Fruehauf nor any other person or bank ever applied to the Probate Court for letters of trusteeship or was ever appointed by the Probate Court as a trustee of that trust, nor did any of the persons named as trustee in the will ever file with the Probate Court a written

waiver of trusteeship. The assets that would have been distributed to the trust under article Eighth were distributed outright to Harry R. Fruehauf, Jr., subsequent to April 29, 1962, pursuant to article Eighth (3).

In the estate tax return filed by the executors of the Estate of Harry R. Fruehauf, the proceeds of the above insurance policies were not included. Respondent's determination of deficiency included such proceeds in the assets of the decedent's estate and he explained his determination in the notice of deficiency as follows:

It is determined that the proceeds of the above insurance policies on the life of the decedent are fully includible in the decedent's gross estate, decedent having possessed, at the time of his death, incidents of ownership, exercisable alone or in conjunction with others, within the meaning of Section 2042 of the Internal Revenue Code of 1954.

Section 2042, I.R.C. 1954,[1] provides in part as follows:

SEC. 2042. PROCEEDS OF LIFE INSURANCE.

The value of the gross estate shall include the value of all property—

\*      \*      \*      \*      \*      \*      \*

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. \* \* \*

The issue here is whether decedent possessed "any of the incidents of ownership" within the meaning of that phrase in the above statute with respect to the several insurance policies written on his life.

Respondent's regulation under the above statute provides in part (sec. 20.2042–1(c)(2)) as follows:

the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. Similarly, the term includes a power to change the beneficiary reserved to a corporation of which the decedent is sole stockholder.

It is respondent's position that decedent possessed incidents of ownership in the policies written on his life within the meaning of the above statute and regulation in that he had the power as a cotrustee under his wife's will to do most of the acts that the regulation says will constitute incidents of ownership.

Petitioners argue the foregoing regulation should be interpreted as limiting incidents of ownership to the right of the insured or his estate

---

[1] All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.

to receive the economic benefits of the policies. They fasten on the language in the regulation: "Generally speaking, the term [incidents of ownership] has reference to the right of the insured or his estate to the economic benefits of the policy." Petitioners argue on brief this language "elevates to a predominant position the general concept that incidents of ownership are ' * * * the right of the insured or his estate to the economic benefits of the policy.' " Petitioners argue that the right of the insured to the economic benefits is the "basic element" without which none of the subsequently enumerated powers, to change beneficiaries or to surrender, cancel, assign, revoke an assignment, pledge or borrow on the policy, can rise to the status of an incident of ownership.

There is no merit in petitioners' argument. The right of the insured or his estate to the economic benefits of the policy is merely one of the several incidents of ownership. The argument advanced by petitioners was rejected in *United States* v. *Rhode Island Hospital Trust Co.*, 355 F. 2d 7 (C.A. 1, 1966), where the court said:

> Plaintiffs seize on Section 20.2042–1(c)(2) of the Treasury Regulations on Estate Tax, which says "* * * the term 'incidents of ownership' is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy." Plaintiffs urge that there must be "a real control over the economic benefits". To this there are two answers. First, it is clear that the reference to ownership in the "technical legal sense" is not abandoned and supplanted by reference to "economic benefits". Second, the regulation goes on to list illustrative powers referred to by Congress in its reports. All of these are powers which may or may not enrich decedent's estate, but which can affect the transfer of the policy proceeds.

The regulation is largely based on language contained in the committee reports at the time the Revenue Act of 1942 eliminated the language "policies taken out" found in section 302(g) of the Revenue Act of 1926.[2]

Respondent points to articles Tenth and Eleventh of the will of decedent's wife giving decedent the broadest kind of power acting with coexecutors and cotrustees to retain policies for such periods as they deem advisable, to cause themselves to be designated as beneficiaries,

---

[2] In H. Rept. No. 2333, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 491, it is stated:

There is no specific enumeration of incidents of ownership, the possession of which at death forms the basis for inclusion of insurance proceeds in the gross estate, as it is impossible to include an exhaustive list. Examples of such incidents are the right of the insured or his estate to the economic benefits of the insurance, the power to change the beneficiary, the power to surrender or cancel the policy, the power to assign it, the power to revoke an assignment, the power to pledge the policy for a loan, or the power to obtain from the insurer a loan against the surrender value of the policy. Incidents of ownership are not confined to those possessed by the decedent in a technical legal sense. For example, a power to change the beneficiary reserved to a corporation of which the decedent is sole stockholder is an incident of ownership in the decedent. * * *

to sell or assign the policies to decedent for the cash surrender value thereof, to surrender any policy for its cash surrender value, and to convert any policy into a paid-up policy. Under article Eleventh the trustees were empowered "to do everything they deem advisable" even though their action would not be considered authorized or appropriate under any statute or rule of law.

A review of existing case law clearly indicates that the possession of such powers affecting the beneficiaries' enjoyment of the proceeds would be sufficient to constitute the possession of "incidents of ownership" within section 2042.

In *Estate of Myron Selznick*, 15 T.C. 716 (1950), affirmed per curiam 195 F. 2d 735, the decedent transferred policies written on his life to a trust, reserving the power to cancel the policies with the consent of two named persons. We held his retained power constituted an incident of ownership under section 811(g) (2), I.R.C. 1939,[3] the predecessor of section 2042. To the same effect is *Estate of Michael Collino*, 25 T.C. 1026 (1956), where the decedent possessed the right to change the beneficiary under the terms of the policies. See also *United States* v. *Rhode Island Hospital Trust Co., supra; Liebmann* v. *Hassett*, 148 F. 2d 247; *Hall* v. *Wheeler*, 174 F. Supp. 418; and *Fried* v. *Granger*, 105 F. Supp. 564, affirmed per curiam 202 F. 2d 150.

It is petitioners' main contention that the term "incidents of ownership" of a life insurance policy does not include powers exercisable only in a fiduciary capacity. In presenting this argument, petitioners first contend powers held in the limited capacity of a fiduciary cannot be incidents of ownership, and then argue that here the powers held by decedent were held in a fiduciary capacity as executor, which is even more limiting than the fiduciary powers decedent might have held in the capacity of a trustee. At the time of decedent's death, no trust provided for under article Eighth of the will had been established. The executors of Vera Fruehauf's will had not completed their duties, and neither decedent nor anyone else had been appointed trustee

---

[3] Sec. 811(g) (2), I.R.C. 1939, provided in part:

SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(g) PROCEEDS OF LIFE INSURANCE.—

\* \* \* \* \* \* \*

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. \* \* \*

of the trust provided for under article Eighth and no distribution had been made to that trust.

The fact that the trust had not been established at the time of decedent's death is immaterial. In considering whether decedent possessed powers that constitute incidents of ownership, the powers granted decedent as trustee must be considered to have been held by the decedent as long as the decedent had the power to become a trustee at the date of his death.[4] *Estate of Ralph Budd*, 49 T.C. 468 (1968). The material fact is the existence of powers without regard to decedent's ability to exercise them at a particular moment. *Commissioner* v. *Noel Estate*, 380 U.S. 678, reversing 332 F. 2d 950 (C.A. 3, 1964). In *Estate of Powel Crosley, Jr.*, 47 T.C. 310, we said, at page 320:

Neither the failure to exercise ownership nor even a momentary or temporary inability to exercise it matters. It is only important whether or not a decedent possessed at his death any of the incidents of such ownership in a general, legal sense. * * *

In *Commissioner* v. *Noel Estate, supra*, the Supreme Court of the United States said:

We hold that estate tax liability for policies "with respect to which the decedent possessed at his death any of the incidents of ownership" depends on a general, legal power to exercise ownership, without regard to the owner's ability to exercise it at a particular moment. * * *

Petitioners also make some argument that "incidents of ownership" under section 2042 should be limited to "substantial ownership." There is no merit in this contention. As stated in *United States* v. *Rhode Island Hospital Trust Co., supra*, Congress—

was not trying to tax the *extent* of the interest of the decedent. * * * What it was attempting to reach in Section 2042 and some other sections was the *power* to dispose of property, * * *. Power can be and is exercised by one possessed of less than complete legal and equitable title. The very phrase "incidents of ownership" connotes something partial, minor, or even fractional in its scope. It speaks more of possibility than of probability.

In our further consideration of petitioners' argument that powers held in a fiduciary capacity are not incidents of ownership, we will consider decedent a trustee fiduciary. Petitioners argue such trustee powers are not incidents of ownership because they are limited to acts that are to be reasonably exercised and designed to carry out the purpose of the trust, and, also, the good faith of such acts is subject

---

[4] Michigan adheres to the general rule that a trustee named in a will must be appointed trustee by the Probate Court. In the case of *In re Jones' Estate*, 334 Mich. 392, 54 N.W. 2d 697, the court stated: "When a trustee is named in a will, the probate court is not authorized to appoint any other person except in case of failure to qualify or other good cause shown."

to equity court review. Petitioners rely on *Estate of Newcomb Carlton*, 34 T.C. 988, reversed on another point 298 F. 2d 415, and *Estate of Bert L. Fuchs*, 47 T.C. 199 (1966).

In *Estate of Newcomb Carlton, supra,* the decedent had established an insurance trust funded by certain securities, the income from which was to be utilized to pay premiums on the 21 insurance policies written on decedent's life that he transferred to the trust. The trust instrument gave the trustees broad powers to borrow on the insurance policies and to surrender them for their cash surrender value, and the decedent-grantor retained the right to appoint a successor to a trustee who had resigned.

One of the arguments made by respondent in the *Carlton* case was that all of the insurance proceeds were taxable because one trustee had resigned and decedent could have appointed himself as cotrustee and gained control over the policies and this constituted possession of incidents of ownership. We held against respondent on this contention, our opinion stating:

> Decedent in the instant case retained until the date of his death the right to the income from the trust in excess of that needed to pay the premiums on the insurance policies and the right to appoint a cotrustee to replace the trustee who had resigned. Any control that decedent would have acquired over the insurance policies had he appointed himself cotrustee would have been control over the policies jointly with the corporate trustee as trustee only and such control would be solely for the benefit of the trust. Such control as trustee would not constitute incidents of ownership in the insurance policies in decedent except in his capacity as trustee for the benefit of the trust.

The case of *Estate of Bert L. Fuchs, supra,* cited by petitioners, contained no issue as to whether powers held in a fiduciary capacity would constitute incidents of ownership under section 2042. There, the policy on decedent's life was subject to a partnership agreement whereby decedent and his two partners had funded a partnership purchase agreement by life insurance policies on the lives of the partners with other partners named as beneficiaries. The agreement provided that each insurance policy would be owned by the named beneficiary who paid all of the premiums, and no right, title, or interest in the policy would rest in the insured. Contrary to the explicit instructions of the partners to the insurance agent, he failed to have the policies show ownership in the beneficiaries. Respondent argued that because clauses in the policies gave insured the right to change beneficiaries and the right to surrender and assign the policies, the decedent possessed incidents of ownership. We held such clauses were in the policies only because the insurance agent failed to have the policies reflect the intent of the partners, but the policies were still subject to the partnership agreement and decedent did not possess incidents of ownership in the policies. In the course of the opinion, we said:

The partners' agreement with respect to the Continental Casualty policies created an informal relationship of a quasi-trust nature which obligated the partners to deal with each policy in a manner conforming to the terms of the agreement. Assuming, *arguendo*, that the insured of each policy herein possessed the naked power to change beneficiaries or make an assignment, we cannot say, in view of the partners' agreement regarding the policies, that the insured herein should be treated in any way differently than a common trustee. Each insured herein was under no less of a legal duty to respect the terms of the partners' agreement than a common trustee legally obligated to respect the terms of a trust indenture. Decedent merely had the same type of power over the Fuchs and Pflasterer policies as a trustee's power to affect trust proceeds. We do not believe that this type of naked power alone is sufficient to bring the insurance proceeds within decedent's gross estate.

The above decision is based on a finding of fact that the insurance contract was subject to the partnership contract restrictions that the agent knew about and decedent had no control or ownership over the policies and therefore no incidents of ownership. The holding in the case does not support petitioners here even though there is language in the opinion which suggests that if there was control in the limited capacity of a trustee it would not constitute incidents of ownership within the statute.

Strikingly analogous to the case at bar are cases that arose under the predecessor of section 2038, I.R.C. 1954 (sec. 302(d), Revenue Act of 1926, and sec. 811(d), I.R.C. 1939), that required inclusion in decedent's estate of all of that property that he had transferred, without adequate and full consideration, where the enjoyment thereof, as provided in section 2038, "was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person * * * to alter, amend, revoke, or terminate * * *." [5]

For example, in *Estate of Albert E. Nettleton*, 4 T.C. 987 (1945), it was argued that decedent's power to alter, revoke, or amend was held in a fiduciary capacity only and therefore the property subject to such power was not includable in the decedent's gross estate. In holding

---

[5] Sec. 2038(a)(1), I.R.C. 1954, includes the parenthetical phrase "(in whatever capacity exercisable)" but this statutory phrase has been held to be declarative of existing law. *Welch v. Terhune*, 126 F. 2d 695 (C.A. 1) ; *Union Trust Co. of Pittsburgh v. Driscoll*, 138 F. 2d 152 (C.A. 3) ; *Commissioner v. Estate of Holmes*, 326 U.S. 480 (1946).

In Paul's 1946 supplement to Federal Estate and Gift Taxation, sec. 10.37, p. 369, it is stated :

"The provision [811(g)(2)(B), 1939 Code, the antecedent of sec. 2042] is taken from Section 811(d) [the antecedent of sec. 2038], which taxes property transferred by the decedent during his lifetime where the enjoyment of the property at the date of decedent's death is subject to a power to alter, amend or revoke, exercisable "either by the decedent alone or in conjunction with any person." Section 811(d) was intended to prevent the avoidance of tax by sharing control of a trust with a person "amenable to persuasion" by the decedent-grantor despite a substantial stake in the trust property.[16] Section 811(g)(2) (B) is directed against similar avoidance of the incidents of ownership test by vesting control in the insured and another. [Footnote omitted.]"

the capacity in which the power is held is immaterial, we stated, at page 991:

> It is immaterial that the power reserved by the grantor can only be exercised in his capacity as trustee or even in conjunction with other trustees or with persons beneficially interested in the trust estate. *Welch* v. *Terhune, supra; Union Trust Co. of Pittsburgh* v. *Driscoll, supra; Estate of John Moir,* 47 B.T.A. 765. Section 811(d) refers to the existence of the power in the decedent and not to the capacity in which it is to be exercised.

Some other cases that held it was immaterial whether the powers under the predecessor statute of section 2038 were held in a fiduciary or non-fiduciary capacity are: *Estate of Ralph Budd, supra; Daniel J. Gallery, et al., Administrators,* 38 B.T.A. 1211 (1938) ; *Welch* v. *Terhune,* 126 F. 2d 695 (C.A. 1) ; *Union Trust Co. of Pittsburgh* v. *Driscoll,* 138 F. 2d 152, certiorari denied 321 U.S. 764 (1944) ; *Estate of Loughridge* v. *Commissioner,* 183 F. 2d 294, certiorari denied 340 U.S. 830 (1950) ; *Van Beuren* v. *McLoughlin,* 262 F. 2d 315 (1958), certiorari denied 359 U.S. 991 (1959).

The rulings in the above cases, we feel, have significant application in the instant case. They all contain reasoning which by analogy applies to cases under section 2042. Sections 2038 and 2042 are designed to bring into the decedent's estate property over which decedent held powers affecting the beneficial enjoyment by transferees, under section 2038, and by beneficiaries, under section 2042. Neither statute makes any reference to the capacity in which the power or control is to be exercisable. In *Welch* v. *Terhune, supra,* the court made this comment (p. 697) with respect to section 811(d), I.R.C. 1939: "So far as we can see, nothing turns on whether the power now in question is to be described as a fiduciary or non-fiduciary power." Clearly, the same comment is applicable to section 2042. Nothing turns in section 2042 on whether the incidents of ownership are owned and held by decedent as an individual or a fiduciary. If decedent held incidents of ownership, which phrase has always been defined as a right affecting the beneficial enjoyment of insurance proceeds by beneficiaries, then it is immaterial whether it was held as a personal right or in the easily established testamentary trust. In either instance, it was his death that severed what *Union Trust Co. of Pittsburgh* v. *Driscoll, supra,* called the "string" that he held over the property.

In the last-cited case, the court reached the conclusion that the capacity in which the power, under section 302(d) of the Revenue Act of 1926, was held was immaterial. It reasoned that the manifest purpose of the statute could be easily frustrated if the scope of the statute with respect to powers reserved was made to depend upon the title conferred by the settlor on himself instead of the extent of ownership or power retained. This reasoning would apply with equal force to section 2042. As previously stated, both statutes are designed to draw

into decedent's estate that property over which decedent had certain powers that were ended by his death. It would frustrate the manifest purpose of the statute if inclusion or exclusion of the insurance proceeds in the decedent's estate is made to depend on the capacity in which decedent held powers over the policies rather than the extent of such powers held by decedent.

There is but little difference in holding fiduciary power over policies in a thrust and holding power in a nonfiduciary capacity over the trust that holds the policies.

In *Estate of Miran Karagheusian*, 23 T.C. 806, revd. 233 F. 2d 197, decedent's wife took out a policy on his life which she then transferred to a trust and reserved the power to amend or revoke the trust with the written consent of her husband or daughter. We declined to hold decedent had any incidents of ownership within section 811(g)(2) (B), I.R.C. 1939 (the antecedent statute of section 2042), because his powers, as we said in the opinion (p. 812), "clearly extended only to the trust and not to the policy as required by the statute." The Court of Appeals for the Second Circuit, however, reversed, stating as follows:

The regulation quoted above [sec. 81.27(a)(7) of Regs. 105, much like sec. 20.2042–1(c)(2) previously quoted herein] indicates that "incident of ownership" is not to be confined to ownership in any technical legal sense, and the example of indirect ownership through a corporation is analogous to the situation here. The decedent, acting with his wife and daughter, had the power at any time until his death to determine the ultimate distribution of the insurance proceeds. This power was an incident of ownership within the meaning of § 811(g)(2)(B) and the entire proceeds of the policy were therefore includible in the decedent's gross estate. Cf. Estate of Selznick v. Commissioner, 1950, 15 T.C. 716, affirmed 9 Cir., 1952, 195 F. 2d 735; see Paul, op. cit. supra at 368–69. To hold otherwise would be to sanction tax avoidance by means of insubstantial alterations in the forms of ownership.

In *United States* v. *Rhode Island Hospital Trust Co.*, *supra*, the court said the relevant question to ask with respect to this statute is: "Did he [decedent] have a capacity to do something to affect the disposition of the policy if he had wanted to?" It cannot be said the capacity to do something to affect the disposition of the policy is lacking merely because it is held in a fiduciary capacity.

It is no answer to say that decedent as trustee owed a duty to the beneficiary to faithfully administer the trust and the beneficiary could have had his actions with respect to the trust corpus reviewed in an action at law or in equity. Cf. *Reinecke* v. *Smith*, 289 U.S. 172 (1933). As stated in *United States* v. *Rhode Island Hospital Trust Co.*, *supra*, it is the existence of "powers" that renders the proceeds of the policies taxable as distinguished from the existence of "rights" or duties owed to others.

In the last-cited case, in answer to the same argument with respect to decedent's power over the property being limited because of trustee duties and responsibilities, the court said:

For decedent had some powers—perhaps not rights, but powers—which could, if exercised alone or in conjunction with another, affect the disposition of some or all of the proceeds of the policy.

There is no doubt at all but that sections 2038 and 2042 are parts of a tax pattern to make includable in the gross estate property over which the decedent held various powers affecting beneficial enjoyment. Since case law makes immaterial for purposes of section 2038 the capacity in which the powers are held, it is not logical to make capacity a significant factor as far as section 2042 is concerned.

In spite of the fact that there is language expressing a contrary view in some of our prior cases, we now hold that the fact the powers over the policies were held by decedent in a fiduciary capacity is no bar to their constituting incidents of ownership under section 2042.

Since the powers granted decedent under the wife's will constitute incidents of ownership, respondent's determination that the proceeds of the policies were includable in decedent's estate was correct.

To reflect settlement of other issues and any other required adjustments which the briefs indicate are not now in controversy.

*Decision will be entered under Rule 50.*

Reviewed by the Court.

Hoyt, *J.*, concurs in the result.

Drennen, *J.*, did not participate in the consideration and disposition of this case.

---

Simpson, *J.*, concurring: I agree with the result reached by the majority, but I wish to emphasize that the *holding* of the case is confined to its facts. In this case, the decedent had the power as trustee, exercisable in conjunction with the other trustees, to surrender the policies and receive the cash surrender values, and such amounts could then be added to the corpus of the trust. If such was done, the income received by the decedent as the income beneficiary of the trust would be increased. Thus, he had a power which could be exercised so as to benefit himself. I agree that in these circumstances, such a power should be considered an incident of ownership, even though he had such power as a fiduciary. However, the case should not be read *to hold* that any power in the nature of an incident of ownership exercisable by an insured decedent in his fiduciary capacity causes the proceeds of the policy to be included in his gross estate.

Withey, Dawson, and Tannenwald, *J.J.*, agree with this concurring opinion.