*1085 OPINION.
Black :
We are asked here to say whether the gifts which decedent made to her children on April 22, 1932, were transfers made in contemplation of death within section 302 (c) of the Revenue Act of 1926 and are therefore includible in her estate in computing the tax due thereon. Since the gifts in question were consummated more than two years before decedent’s death, there is no presumption under that section favoring the respondent’s determination that they come within that provision of the statute. See McGregor v. Commissioner, 82 Fed. (2d) 948. We think, moreover, that the generally operative presumption which places on the petitioner the burden of showing that respondent’s determination is incorrect has, in this case, been overcome by the evidence presented by the petitioners.
It is seldom that we find evidence which so clearly establishes that the transferor-decedent herself did not have a presentiment of approaching death. See Percy B. Eckhart, Executor, 33 B. T. A. 426. She enjoyed health which was exceptionally good for a woman her age. Her energy and vigor were a source of remark apparently to all who knew her. She had well cultivated! interests, which she pursued actively. She was by nature optimistic and had an exceptionally hopeful outlook. We find nothing in decedent’s mental or physical condition which would support a finding that the gifts which she made constituted transfers in contemplation of death. Respondent does not contend that at the time the decedent made the transfers in question she was in any fear of imminent death. His main argument resolves itself into the contention that the circumstances of the death of decedent’s husband and the disposition of his estate together with the decedent’s often expressed desire to share that estate with her children spell out a dominant motive on her part to dispose of the greater portion of her property prior to and in anticipation of her death. See United States v. Wells, 283 U. S. 102. We do not think respondent’s argument is well taken, in view of the evidence in the record.
In the view which we take of the evidence, it has been shown that decedent’s husband prior to his death had fostered in his nine children the feeling that they with their parents formed a closely knit unit in which each shared with the others all of his or her material goods; that the decedent when she received the whole of *1086 her husband’s estate felt that this disposition under a will executed fifteen years previously did not accurately reflect her husband’s desires; that, therefore, decedent’s plans during all of the period following his death down to 1932 were to make some division of his estate among his children as she believed he would have desired. See Estate of Herbert G. Lowe, 38 B. T. A. 117. Accordingly, decedent as early as 1924, when she first received the estate, discussed with her advisers the means of effectuating these designs. She was advised that pending litigation against the Dayton Securities Co., in which she was heavily interested, made it inadvisable to' attempt any disposition then. She accordingly waited for a more opportune moment; her impatience at the delay is reflected in her conversations with her counsel and her children. The latter, indeed, were well informed of their mother’s plans to make a substantial disposition of their father’s estate among them. In the meantime she partially effectuated her desires by setting up in 1926 a trust for her seven daughters and by making gifts from time to time to thei children, including the present of a home for each of the daughters.
It seems reasonable to us, viewing the whole evidence, that the decedent should conclude that 1932 was an opportune time for carrying out the plans which she had made several years before. In 1930-1931 the litigation in which she was vitally interested was finally concluded and a considerable amount of liquid assets came to her through the dissolution and liquidation of the Dayton Securities Co. The decedent instructed her attorney to form a corporation, which he did late in the year 1931 and shortly after the beginning of 1932 the assets intended to form the substance of the gifts were transferred to the corporation, and the stock of the corporation was given in equal proportions to her children. We find the evidence persuasive that decedent in all this procedure was merely effectuating plans long held for the division of her husband’s estate, without thought of her own demise. She retained for herself a very considerable amount of property, as the estate tax return in evidence shows. The value of decedent’s gross estate as reported by the executors on the estate tax return which they filed was $1,510,255.21, and the amount of the net estate was $1,043,617.59 after deductions and the specific exemption of $100,000. Thus we do not have a case where a decedent a few years prior to her death gives away all of her property to her children, thus indicating a testamentary disposition.
The gifts in addition to the Talbott Realty Co. stock which decedent made on April 22,1932, do not by their coincidence in time add to the respondent’s position. The presentation on that day of the deed to Daisy Greene’s home site was, we think, purely mechanical. It seems clear that the actual gift of the realty was made at an earlier time and that the delivery of the deed was delayed only in order to clear up *1087 title to the land. In this guise this gift takes its place along with the gifts of houses to each of the other children made over an extended period of time. The forgiveness of the debt of Nelson S. Talbott on this date likewise, it seems to us, does not lend any additional support to the respondent’s view that decedent was attempting a general disposal of her properties in contemplation of death. Her practice through the years prior to 1932 had been to give to her children property or money as they might have need of them. We think the can-celation of the indebtedness was in line with this habit. The evidence shows that the N. S. Talbott Co., which was operated by Nelson Talbott, was engaged in 1932 in extensive underwritings, a business in which its financial position as reflected by its statement counted for a great deal. Its financial condition was not good and it had suffered heavy losses. It was thought that by canceling the indebtedness the personal statement of N. S. Talbott would be greatly improved and that this would be reflected favorably in the company’s financial status. Moreover, it was the purpose of the decedent by her gifts in 1932 to give to each of her children an independent competence, and this in the case of Nelson Talbott might not be accomplished except through the gift of the Talbott Eealty Co. stock and at the same time cancelation of the debt which he owed decedent. We think therefore that no special significance may be attached to the forgiveness of Nelson Talbott’s debt in 1932. Bather we see in it only a further elaboration of the purpose which we have concluded above might most properly be assigned to the gifts made by decedent in 1932.
The claim made by the petitioners for a credit for state estate or inheritance tax has been recognized by respondent on brief as a possible credit upon a proper showing. Under section 802 of the Revenue Act of 1932 the credit should be allowed on proper showing made within the allotted time.

Decision will he entered under Rule 50.