Estate of Genevieve Brady Macaulay, Nathan L. Miller and Lawrence Cavanagh, as Sole Surviving and Sole Acting Executors, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 109617. Promulgated February 24, 1944.

William FitzGibbon, Esq., and Sandow Holman, Esq., for the petitioners.

Thomas H. Lewis, Jr., Esq., for the respondent.

## OPINION.

HILL, *Judge*: The principal question in this proceeding is whether transfers of stock and personal property made by decedent to her husband in April and July 1938, respectively, were made in contemplation of death within the meaning of section 302 (c) of the Revenue Act of 1926 as amended by section 802 (a) of the Revenue Act of 1932. On the determination that they were, respondent increased the value of decedent's estate by $485,292, the fair market value of such property on the date of decedent's death.

It is well settled that the words "in contemplation of death" mean the thought of death is the impelling cause of the transfer and, further, that the estate tax does not cover gifts *inter vivos* which spring from a different motive. *United States* v. *Wells*, 283 U. S. 102; *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48. Hence, in the many cases involving the question of whether particular transfers were made in contemplation of death the inquiry has been directed to the decedent's motive in making them.

The facts here disclose that the instant gifts were made during the year in which decedent died. By statute they presumptively were made in contemplation of death. By way of overcoming this presumption, petitioners adduced considerable evidence stressing decedent's long record of good health, the suddenness of her death, the continuous fast tempo of her life to the end, and the considerations which impelled her to make the gifts of stock, furnishings, and works of art to her husband. This evidence, uncontroverted, impels the conclusion that decedent to the last had no presentiment of impending death and that the gifts in question were made, respectively, to enable Macaulay to defray his increased current expenses and to refurbish and enhance the beauty of his embassy. The gift of stock was also calculated to decrease decedent's income taxes. Such motives obviously are associated with life, not death, and respondent does not argue to the con-

trary. This conclusion should dispose of the issue, as it has in many similar proceedings. However, respondent asserts, in effect, that this case may not turn on the answer to the normal inquiry, i. e., the decedent's motive in making the transfer, but that a gift *inter vivos* made in ademption of a legacy, such as he claims we have here, is of necessity made in contemplation of death within the meaning of the statute.

Respondent's proposition, to which his brief is devoted solely, proceeds on the premise that decedent's gift of stock to her husband was in the nature of an advancement to be credited against his $1,000,000 legacy. We think the premise unsound. It is true that paragraph sixth of the decedent's will recognized and provided for the possibility that testator might make advances to some of the legatees. It is also true that Macaulay acceded to a coexecutor's suggestion that, in view of his wife's untimely death, he treat the gift as having been made in reduction of the general bequest. In spite of these circumstances, however, we are unable to say that the gift of stock was, in fact, in the nature of an advancement, for it does not appear that decedent intended it to be such. A clause analogous to paragraph sixth of decedent's last will had been included in wills executed by her before the death of her first husband in 1930. Consequently, it is obvious that this clause was not conceived originally with special reference to Macaulay's legacy and in anticipation of advances to be made to him. Moreover, an examination of the salient terms of the clause itself convinces us that decedent did not mean that every *inter vivos* transfer to any legatee should, to that extent, abate his legacy. In clause sixth she said, "I may also make advances to some of the legatees herein named *on account of their said legacies*, * * *." (Emphasis supplied.) Only such advances were to abate legacies. Certainly, decedent did not thereby foreclose to herself the right to make gifts to legatees which were otherwise than on account of their legacies. The New York courts do not regard a statutory advance as having been made by a parent to his child unless it appears that the parent intended the questioned *inter vivos* gift to be such. *In re Farmers Loan & Trust Co.*, 168 N. Y. S. 952; affd., 122 N. E. 880; *In re Morgan*, 9 N. E. 861. We think the donor's intent likewise must control as to the "advancement character" of a gift made by a testator to one of his legatees. Neither by word nor act did decedent evince an intent that the transfer of the stock should be deemed an advance on account of her husband's legacy of $1,000,000. We must, therefore, assume that she had no such intent and that the gift, accordingly, was not an advance. That Macaulay agreed to a different treatment thereof after decedent's death is immaterial.

We need not, however, rest our decision solely on the ground that respondent's contention is based upon an incorrect premise, for, as-

suming the premise to be correct, his conclusions remain unsound. An advancement is an irrevocable gift *in praesenti*. *In re Farmers Loan & Trust Co., supra.* The taxing statutes set up a system of taxing gifts which is entirely separate from the estate tax. Yet respondent would have us declare that gifts which reduce a bequest to the donee are conclusively subject to the estate tax rather than the gift tax. This on the theory that such gifts must necessarily be made in contemplation of death as taking the place of a testamentary act. We find no basis in law or in fact supporting such a theory or directing such a conclusion. There is nothing inherently peculiar about gifts considered as advancements which warrants according them special treatment for tax purposes. It is true they are made in diminution of a bequest or bequests. *In re Mead's Estate*, 194 N. Y. S. 349. However, every substantial gift reduces the donor's estate *pro tanto* and thus diminishes the amount available for devolution in the event of his death. The estate, as a whole, is diminished no more because a gift is to abate the donee's legacy to the extent of the gift. Treating it as an advancement merely affects the apportionment of the estate among the legatees. If sound, respondent's theory would apply as well to every gift by one having previously made a will, for, if the gift did not diminish the bequest to one legatee, it would reduce the balance available to the residuary legatees or abate the legacies pro rata. A conclusive presumption that all such gifts are made in contemplation of death could not stand. See *Heiner* v. *Donnan*, 285 U. S. 312, which held unconstitutional the conclusive statutory presumption that gifts made within two years of death were made in contemplation of death. We hold respondent's contention on this point untenable.

This is not to say that gifts which abate legacies are never to be regarded as having been made in contemplation of death. They bear scrutiny just as do other gifts. In other words, they must be subjected to the same test as are gifts in general, i. e., that of the decedent's motive in making them. This was the test applied to the advancements in *United States* v. *Wells, supra*, and *Heiner* v. *Donnan, supra.* It is also consistent with respondent's long standing ruling as set forth in Regulations 80, art. 16, applicable to decedents dying in 1938 and from which respondent's present position is a departure, which is as follows:

The fact that a gift was made as an advancement to be taken into account upon the final distribution of the decedent's estate is not, in and of itself, determinative of its taxability.

No contention has been made that the gift of furnishings and objects of art assumed the character of an advancement.

Since the evidence overwhelmingly shows decedent's motive in making the gifts in question to have been associated with life and not

death, we hold that petitioners have overcome the presumption to the contrary, and that respondent erred by including in decedent's estate the value of such gifts.

We have found, in accordance with the stipulation, that the estate tax return disclosed an estate tax liability of $1,361,517.07, and that $1,497,262.38 was paid to the collector coincident with the filing of the return. Thus it appears that petitioners paid $135,745.31 more than the liability which it acknowledged. In determining the deficiency, largely based upon the contention disposed of adversely to him above, respondent disregarded the receipt of any amount in excess of the tax shown on the tax return, although the excess amount was not returned to petitioners. The deficiency determined, however, was much greater than the additional amount paid.

In view of our conclusion that the value of the two gifts is not includable in the estate and in view of other adjustments to which the parties have agreed, it is manifest that the actual estate tax liability was something less than the $1,497,262.38 paid. The exact figure will be determined by the recomputation under Rule 50. We think the only fair inference to be drawn from the evidence is that the entire sum paid was paid in respect of the estate tax for which petitioners were then liable. When payment was made the tax was due. Cf. *Busser* v. *United States*, 130 Fed. (2d) 537. Petitioners declared what, in their judgment, they believed the indebtedness to be, but elected to pay an amount which they estimated was due if they were unable to overcome the presumption regarding taxability of the gifts. It now appears that the payment was too great. Hence, they have made an overpayment of tax. *Atlantic Oil Producing Co.* v. *United States*, 35 Fed. Supp. 766; *Chicago Title & Trust Co.* v. *United States*, 45 Fed. Supp. 323. The overpayment is in an amount by which $1,497,262.38 exceeds the tax liability as finally settled by the recomputation. It was paid on February 20, 1940, within three years of the filing of the original petition in the cause.

By the second issue we are asked to decide whether petitioners are entitled to a refund with interest from the date of the overpayment. We are unable to resolve this question. Our jurisdiction does not extend to matters pertaining to interest. It is limited to the determination of the existence of a deficiency or an overpayment, as the case may be, and the amount thereof. *George H. Jones, Executor*, 34 B. T. A. 280. Pursuant to section 319 (c) of the Revenue Act of 1926 as amended by section 809 (i) of the Revenue Act of 1938, we have found that petitioners have made an overpayment of tax and its amount, and that it was made within three years of the filing of the petition herein. We may do no more.

*Decision will be entered under Rule 50.*