ESTATE OF D. I. COOPER, THE FIRST NATIONAL BANK OF PORTLAND (OREGON), EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2063.    Promulgated November 29, 1946.

*Carl E. Davidson, Esq.*, and *Charles P. Duffy, Esq.*, for the petitioner.
*Wilford H. Payne, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: Respondent's primary contention is that all the decedent's gifts here involved, both outright and in trust, were transfers made in contemplation of death. We shall, therefore, give first consideration to this contention.

In *United States* v. *Wells*, 283 U. S. 102, the Supreme Court laid down the tests for determining whether transfers are made in contemplation of death. It stated that the thought of death must be the "impelling cause," the "inducing cause," or the "controlling motive" prompting the disposition of property; that "the statute does not embrace gifts *inter vivos* which spring from a different motive"; and that "the motive which induces the transfer must be of the sort which leads to testamentary disposition."

Applying these tests first to the gifts to Frank, we find that the decedent was most eager to have his son become active in the business of Howard-Cooper Corporation. L. W. Gardner, a fellow officer of decedent, whose aid decedent had sought in training Frank in the business, testified that he suggested to decedent that a gift of stock in the corporation, so as to provide Frank with an actual income, would stimulate Frank's interest. We think, from decedent's statements to his business associates and to Frank, as well as from other circumstances appearing of record, that decedent's primary concern was to train Frank, to encourage him to take an active interest in the business, and to keep him from going out into some other kind of work. Such motives are associated with life rather than with death. See *Estate of Herbert G. Lowe*, 38 B. T. A. 117.

It appears also that a desire to reduce his income tax burden was a factor contributing in part to the transfers to Frank. Although of perhaps minor importance, this, too, was a motive connected with life. *Estate of Genevieve Brady Macaulay*, 3 T. C. 350.

Respondent's position as to the gifts to Frank is not aided by a consideration of the state of decedent's health. They were all made prior to March 1939, when decedent first had any serious illness.

In the final analysis, the principal reason advanced by respondent for the inclusion of the transfers to Frank amounts to this: That the gifts to the Nellie and Eileen Cooper trusts were made at or about the same time as the outright gifts to Frank and, since the former were transfers in contemplation of death, it must be held that the latter were of the same category. We do not agree. The transfers to Frank and those to the trusts were separate and distinct, and each must be tested in the light of its own surrounding circumstances and underlying motives. While the time factor may be of some evidential value, it does not follow that a transfer to one person is in contemplation of death merely because it is made simultaneously with transfers to other persons, even though the latter transfers may be clearly in contemplation of death.

We conclude that the dominant motives prompting the gifts to Frank were associated with life, and that the thought of death was

not the "impelling" or "inducing" cause. *United States* v. *Wells*, *supra*. Since contemplation of death is the only ground which was or could have been asserted in support of the includibility of these gifts, it follows that they are not subject to the estate tax.

We come now to a consideration of the transfers to the Nellie and Eileen Cooper trusts. These, the respondent contends, not only were made in contemplation of death, but also were intended to take effect in possession or enjoyment at or after death, within the meaning of section 811 (c) of the code, and were subject to change through the exercise of a power to alter, amend, revoke, or terminate, within the meaning of section 811 (d).

Under the terms of each trust the income was to be accumulated and added to corpus. Upon the death of decedent, the trustee of the Nellie Cooper trust was to pay over the trust fund to the First National Bank of Portland, the executor of decedent's estate, "to be added to, become a part of, and distributed under the terms of the Trustor's will, for the sole use, benefit and account of NELLIE COOPER, wife of the Trustor, during her lifetime." An identical provision was made with respect to Eileen in the Eileen Cooper trust.

The Nellie Cooper trust further provided that upon Nellie's death or on the date when the fund was delivered to the bank in the event she predeceased the settlor, the fund was to be equally divided and one-half thereof "added to the portions of the Trustor's estate set aside for each of his children, Frank R. Cooper and Eileen V. Cooper, and distributed to them in accordance with the provisions of the said Trustor's will." The Eileen Cooper trust provided a schedule for distribution or disposition of the property upon the death of Eileen, or upon the date the fund was delivered to the bank in the event she predeceased the settlor.

It is thus apparent that the trust instruments were not complete in themselves. In executing them the decedent made disposition of the trust property dependent upon the terms of his "will"—than which no document could be more testamentary in character. This mention of "the Trustor's will" is, in itself, strong evidence of the thought of death; and when, in addition, the disposition of the property is to be governed by his will, it is difficult to escape the conclusion that death was contemplated.

Respondent has determined that the transfers to these trusts were made in contemplation of death. To overcome the presumption attaching to that determination petitioner has not, as it did with reference to the gifts to Frank, produced convincing evidence of dominant motives associated with life. Frank Cooper testified that upon the occasion of the first gift to him the decedent told him that gifts were

also being made to his mother and sister in order not to show partiality and that, since they lacked business experience, the gifts were in trust. From this the petitioner argues that the primary motive of decedent in making the transfers in trust was the equalization of gifts among members of his family, and that such a motive is one connected with life.

If Nellie and Eileen were to have any benefit from or enjoyment of the trust property during the lifetime of the decedent, we might agree that decedent was motivated by thoughts associated with life. But it is obvious that decedent did not intend them to benefit so long as he should live. Indeed, it was necessary that they survive him in order to derive anything from the property. That fact, the fact that the transfers in trust were conditioned upon the provisions of "the Trustor's will," and almost every other circumstance point unmistakably to a primary purpose to make proper provision for his wife and daughter only after his death. We conclude that decedent's dominant motive was "of the sort which leads to testamentary disposition," *United States* v. *Wells*, *supra*, and that the transfers to these trusts sprang from thoughts associated with death.

We likewise agree with the respondent that the trust property is also properly includible in the gross estate under other provisions of section 811 (c) and under section 811 (d). By tying in the transfers to trust with the provisions of his will, decedent might, by will, have varied or altered the enjoyment of both the income and corpus of the trust property up until his death. Cf. *Estate of Florence Althea Gibb*, 6 T. C. 1088; and see *Chickering* v. *Commissioner*, 118 Fed. (2d) 254; *Porter* v. *Commissioner*, 288 U. S. 436.

We find no merit in petitioner's argument that the provisions of decedent's will executed July 14, 1936, as it existed when the trusts were created, must be deemed to have been "incorporated by reference" into the trusts, and that decedent could not have changed the disposition of the trust property by executing a new will. Certainly the trust instruments do not, by their general reference to "the Trustor's will," identify or describe any one existing instrument with particularity. Nor is any aid to be derived from the statements in the trusts to the effect that they are irrevocable and unamendable, which must give way before the realities of the situation. See *William J. Garland*, 42 B. T. A. 324. In this connection, it is not without significance, as bearing on decedent's more probable intent, that on July 13, 1940, less than two months before his death, decedent undertook to amend both his will and the trusts.

*Decision will be entered under Rule 50.*