Jane Torrance Baker and Horace F. Baker, Executors of the Estate of Mary R. Torrance, Deceased v. Commissioner.
Jane Torrance Baker & Horace F. Baker, Ex'rs of the Estate of Mary R. Torrance v. Commissioner
Docket No. 11928.
United States Tax Court
1947 Tax Ct. Memo LEXIS 25; 6 T.C.M. (CCH) 1249; T.C.M. (RIA) 47319; November 28, 1947
*25 Harry F. Stambaugh, Esq., 66 St. Nicholas Bldg., Pittsburgh, Pa., for the petitioners. Brooks Fullerton, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency of $61,282.37 in estate tax of the estate of Mary R. D. Torrance, hereinafter referred to as decedent. The single issue presented is whether decedent's transfers of stock to her daughter and grandchildren were transfers in contemplation of death within the purview of Internal Revenue Code, section 811 (c). Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found. Decedent was born on November 19, 1860, and died on January 20, 1944. The estate tax return was filed with the collector for the twenty-third district of Pennsylvania. Jane Torrance Baker and her husband, Horace F. Baker, daughter and son-in-law of decedent, are executors under decedent's will. On December 30, 1935, when she was 75 years of age, decedent transferred certain shares of common stock of American Radiator and Standard Sanitary Corporation to her only child, her daughter, and other shares in trust for *26 her only grandchildren, Francis J. Torrance Baker, then aged 19, and Mary Rachel Baker, then aged 18, as follows: Values at
Values at date
No. of
December 30,
of death of
Transferees
shares
1935
decedent
Jane Torrance Baker and Horace F. Baker, trustees for
Francis J. Torrance Baker
10,000
$239,400.00
$ 95,000.00
Jane Torrance Baker and Horace F. Baker, trustees for
Mary Rachel Baker
10,000
239,400.00
95,000.00
Jane Torrance Baker
25,000
607,500.00 *
237,500.00
It is these transfers which respondent impugns as having been made in contemplation of death. Transfers in 1935 of 200 shares of the same stock to each of her two sisters, and 450 shares to her son-in-law are not now questioned by respondent. Decedent's daughter and son-in-law were trustees under the trusts for each of their children, created by the trust agreements executed on December 30, 1935. The trustees were given uncontrolled discretion to use and apply the net income of the trust for the care, comfort, maintenance, education, and general weffare of the beneficiary until the latter should attain 21 years of age, after which the entire *27 net income should be paid over. The trust was to terminate upon the beneficiary's attainment of the age of 30 years, when the corpus and undistributed income were to be distributed. The trusts were made irrevocable and no powers were retained by decedent. On the same date, decedent made her last will, in which, after providing for small annuities to the two sisters and a niece and some small monetary bequests, the residue of her estate was left to her daughter. She also executed at the same time a deed in which she conveyed in trust for charitable purposes title to certain improved real property, which for a number of years prior thereto she had operated as a settlement house known as the Manchester Education Center. It was her purpose that the activities of the Center be carried on in substantially the same manner as theretofore. As of the date of these acts, decedent was worth in excess of $3,750,000. Her physical condition was good, and her health continued unimpaired until 1942. She traveled extensively, transacted much of her own personal business, and maintained an active interest in social welfare. Her death in 1944 was caused by hypostatic pneumonia following a cerebral *28 hemorrhage. Among the purposes which motivated the 1935 gifts of stock were decedent's interest in saving income and gift taxes and her desire to provide for the education of her grandchildren. Beginning in 1923, decedent undertook to pay the expenses of the education of her grandchildren. Upon the receipt of the first dividend on the transferred stock in 1936, she no longer paid such expenses, and they were thereafter paid from the income of the trusts. The matter of establishment of the trusts was the subject of discussion between decedent and her son-in-law, her attorney and adviser, for some months prior to their execution. He drafted the instruments, as well as decedent's will. The drafting and execution of the deed were also done upon advice of her son-in-law, who explained that by this means alone could the real estate be exempt from property tax. During her lifetime decedent had made substantial cash gifts to her daughter, approximating $115,000, of which gifts of about $8,500 were made after the 1935 transfers. She also expended as a gift in 1924 the sum of approximately $70,000 in payments for alterations and repairs to a residence for her daughter and the latter's *29 husband. She made cash gifts to her grandson of approximately $10,500, of which about $4,300 were made after 1935. Cash gifts of about $6,400 were made to her granddaughter; gifts of about $1,250 having been made after 1935. The gifts of stock by decedent in 1935 to her daughter and in trust for her grandchildren were not transfers in contemplation of death Opinion The considerations supporting the characterization of these transfers as made in contemplation of death are decedent's advanced age at the time of the gift, see Updike v. Commissioner ( C.C.A., 8th Cir.), 88 Fed. (2d) 807, certiorari denied, 301 U.S. 708, and the simultaneous execution of her will. See Igleheart v. Commissioner ( C.C.A., 5th Cir.), 77 Fed. (2d) 704. In determining, however, what was her impelling motive, neither of these aspects is conclusive. Anna Ball Kneeland, 34 B.T.A. 816, 821; Edith Huggard Sharp, 30 B.T.A. 532, affirmed (C.C.A., 3rd Cir.), 91 Fed. (2d) 804. The factors tending to indicate that motives connected with life, rather than contemplation of death, were preponderant, are in our view more persuasive and *30 are largely uncontradicted. The testimony was that decedent was concerned with income taxes, Estate of Genevieve Brady Macauley, 3 T.C. 350, affirmed (C.C.A., 2nd Cir.), 150 Fed. (2d) 847; that she selected the time for making the gifts with an eye to prospective increases in gift taxes; that she was in good health and apparently unusually alert and active for a woman of her age. Estate of Katharine H. Talbott, 42 B.T.A. 1081; that she had made other gifts of substance in the past, Estate of John Moir, 47 B.T.A. 765; and that she made significant gifts to other beneficiaries at about the same time, which even respondent does not contend were motivated by contemplation of death. To these may be added the further circumstances that her will did not dispose of her property correspondingly to the gifts; that although her gifts were considerable in size, her estate remaining for devolution at death was about twice as large; and that she simultaneously executed a transfer for a presumptively charitable purpose, which consequently shows no indication of being connected with any effort to escape estate tax. Decedent, on the one hand, did *31 much less, accordingly, than she might to have saved estate taxes, and on the other hand as a part of the same operation undertook an action which could have had no bearing upon the estate tax liability. Compared with the gift taxes actually paid at the time, $145,000, the estate tax deficiency here in issue is relatively small - considerably less than half. Even if it were clear that a purpose to save estate taxes would by itself [1] establish the required motive, cf. Allen v. Trust Co. of Georgia, 326 U.S. 630, we could not under the circumstances conclude that it was the compelling one. By making the transfers in question, decedent relieved herself of the self-imposed obligation of periodic contributions for the education of her grandchildren, of taxes on the income so employed, of a prospective increase in gift tax rates, and of the responsibility of maintaining *32 property devoted to charitable use. On the record before us, these purposes related to decedent's continued life, seem to us preponderant over any which might be viewed as connected with death. We have accordingly found that the transfers in question were not made in contemplation of death. Decision will be entered under Rule 50. Footnotes
*. Includes $9,000 cash.↩
1. When such a motive "accompanies a gift which gives to the donee immediate enjoyment of the income, alone it may not be enough to include the property within the donor's estate." Vanderlip v. Commissioner (C.C.A., 2nd Cir.), 155 Fed. (2d) 152, 154; certiorari denied, 329 U.S. 728↩.