Estate of Halvor J. T. Jacobsen, deceased, Guaranty Trust Company of New York, Executor v. Commissioner.
Estate of Halvor J. T. Jacobsen v. Commissioner
Docket No. 22602.
United States Tax Court
1950 Tax Ct. Memo LEXIS 23; 9 T.C.M. (CCH) 1112; T.C.M. (RIA) 50301; December 7, 1950
*23 Estate tax: Contemplation of death. - The decedent transferred property to his wife during his life. The transfers were made at the wife's request and upon the advice of a friend of the wife. The transfers were made nine years prior to the death of the decedent. The impelling reasons and dominant purposes for making the transfers were to satisfy the wife's desire for financial independence and her own income, to give recognition of her contributions to their family life, and to overcome family discord and tension caused by the wife's concern over her financial status. The transfers were not a substitute for testamentary disposition of property. The decedent was in good health at the time of making the transfers. The wife predeceased her husband, the decedent here, and made disposition under her own will of the property which he had conveyed to her. Held: That the inter vivos transfers of property to the wife were not made in contemplation of death within section 811 (c), Internal Revenue Code, and should not be included in decedent's gross estate. L. Reyner Samet, Esq., for the petitioner. William E. Murray, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent has determined that there is a deficiency in estate tax in the amount of $23,251.55. The respondent agrees that under Section 81.9 of Regulations 105, the petitioner is entitled to receive credit for State inheritance or estate tax paid with respect to the estate of the decedent upon submission of evidence of payment of the tax imposed by a State. The only question presented by the pleadings is whether inter vivos transfers of securities of a value of $99,984.50 which the decedent made in 1937 to his wife, nine years prior to his death, were made in contemplation of death within the meaning of section 811 (c) (1) of the Internal Revenue Code *25 so as to be includible in the gross estate of the decedent. The estate tax return was filed with the collector for the third district of New York. Findings of Fact The decedent, Halvor J. T. Jacobsen, was born on May 15, 1865. He died testate, in New York City, New York, on January 6, 1946, at the age of 80 years and 8 months. A daughter and two grandchildren are his survivors. His wife died suddenly in 1938. The petitioner is the duly appointed and acting executor of the estate of the decedent. It reported in the estate tax return that the value of the gross estate of the decedent at the date of his death was $120,680.55. The executor, in the estate tax return, exercised the option to have the estate valued as of one year after the date of death. Anna J. Jacobsen, hereinafter called Mrs. Jacobsen, was the wife of the decedent. She was born on April 26, 1877, and was 12 years younger than her husband, the decedent. The decedent and his wife had one child, Ellen, who was born in about 1913. Ellen married Jules Aubry in 1935, and her child, Anne, was born in about June of 1936. A second child was born of this marriage. Mrs. Jacobsen was devoted to her husband throughout *26 their married life. One characteristic of her temperament was a strong trait of personal independence. Also, she had the belief that she had contributed to her husband's and family's welfare, and that she was entitled to have some property of her own to provide her with financial independence and to relieve herself of having to ask her husband for money for her own use. She desired to be independent in matters involving money. She disliked asking her husband for money to the extent that she would not make requests, and would forego fulfilling personal desires rather than make requests for funds. The decedent's practice had been to husband carefully his earnings and savings. At some time prior to 1937, the decedent retired from his business, having achieved financial independence. He was modest in his living standards. He gave his wife some allowance but was forgetful at times about giving it to her. His provision of money to his wife for her use was restricted, and she felt that it was inadequate. For several years prior to 1937, Mrs. Jacobsen expressed her dissatisfaction about her position of financial dependency in ways which developed tension and discord in the family. Her *27 feeling about the matter was the only source of domestic conflict. From at least 1934, and thereafter, she asked the decedent to give her some competence of her own but he was unwilling to do so. She told her daughter of her wish that her husband would give her some portion of his property as a means of giving her some financial independence, and she frequently discussed her views with a close friend whom she had known for about ten years, a Miss Ives. The decedent did not readily understand his wife's attitude but recognized that it was the cause of family friction, as his daughter did, also. He discussed the problem of family discord with Miss Ives toward the end of 1936. She told him that she understood the cause of their family discord to be Mrs. Jacobsen's persistent desire to have property of her own which would give her some independent income, and her feeling that she was never adequately supplied with the means to do what she wished. Miss Ives was sympathetic with Mrs. Jacobsen's views and feelings, and felt that she was insufficiently repaid by her husband for bearing the burdens of home life and doing the housework and entertaining for her husband. Miss Ives was acquainted *28 with domestic crises which had developed under the circumstances, and she urged the decedent to accede to Mrs. Jacobsen's wishes by giving her some financial independence in order to restrore harmony in the family. In December of 1936, the decedent told his lawyer that he was going to transfer some of his property to his wife. Again, on January 5 and 6 of 1937, the decedent advised his attorney that he had decided to transfer a substantial part of his property to his wife because she had pressed him a great deal and had been insistent, and he wanted to satisfy his wife and end the dissension about the matter which had extended over several years. Subsequently, Mrs. Jacobsen told the decedent's lawyer of her views about her right to have some financial independence as a married woman. On January 14, 1937, the decedent gave his wife shares of stock in several corporations, which constituted a substantial part of his assets. He wrote a letter to his wife bearing the above date, which he gave to her, in which he set forth his reasons for making the gift. In this letter the decedent stated, among other things, that he desired to make the gift to her so that she would be "altogether *29 content and no longer feel dependent, and so that from now on throughout our lives this one cause of misunderstanding may be altogether absent." Elsewhere in the letter, the decedent stated, "It is what I am anxious to do for you and for our life together." The decedent's daughter understood that the decedent transferred part of his property to his wife against his will and only to satisfy his wife. The Guaranty Trust Company of New York was directed to hold the securities which were given to Mrs. Jacobsen in a safe-keeping account in her name, and to pay all of the income thereof to Chase National Bank for deposit in a bank account of Mrs. Jacobsen. Mrs. Jacobsen died suddenly in 1938 at the age of about 61 years. Her last will and testament was probated and a Federal estate tax return for her estate was filed. The last will of Mrs. Jacobsen revoked an earlier will which she had made in 1921 under which her husband was the beneficiary. By her last will, Mrs. Jacobsen bequeathed to her husband, if he should survive her, a life estate in her property, and directed that it be held in trust, upon his death, for the benefit of her daughter during her life, and that the trust should *30 be distributed to her grandchildren upon the death of her daughter; or, if her husband should predecease her, she directed that her estate should be held in trust for her daughter, for life, with the trust corpus to pass to the grandchildren upon the daughter's death. Mrs. Jacobsen made her will on January 14, 1937. The decedent was in good health at the time of making the gift to his wife on January 14, 1937, and he did not have any concern about death. He enjoyed good health throughout his life. In his later years he had neuritis, or arthritis, but this was a minor disturbance. He enjoyed traveling. He did not have a personal or family physician, although he had checkups made at various times. In October of 1945, the decedent's daughter prevailed upon him to consult a physician. He consulted a doctor with whom he had no previous acquaintance. The doctor advised decedent's daughter that the decedent had cancer, but neither the doctor nor the daughter told the decedent what the diagnosis was. The decedent died on January 6, 1946, after a period of confinement to his bed for two weeks. The cause of death was cancer. The decedent executed his last will and testament on February 9, 1939, and *31 he executed a codicil to this will on September 19, 1941. It was probated and administered. Under this will, the decedent bequeathed his chattel property to his daughter, if she survived him, and all of the residue of his estate to his daughter in trust for life, the trust corpus to be distributed to his grandchildren upon his daughter's death. The decedent directed the trustee to distribute part of the trust corpus to his daughter during her life, namely, $25,000 in cash or property on her thirty-fifth and fortieth birthday. During his life, the decedent made several wills - on June 14, 1921, on October 3, 1934, and on January 14, 1937, each of which was revoked by a subsequent will until the last will of February 9, 1939. In every will the decedent's wife, daughter, and the issue of his daughter, if any, were the chief beneficiaries, excepting that in his last will his wife, who had predeceased him, was not named. Ultimate Findings of Fact We find that the decedent's dominant purpose in making the gifts of securities to his wife on January 14, 1937, was to satisfy her requests for some financial independence during her life to overcome discord which had existed for several *32 years between his wife and himself over his failure to provide her with her own independent income for her own use, and to provide her with the financial independence which she desired for her own enjoyment during their lives together; that the decedent did not make the transfers of property as a substitute for a testamentary disposition; and that the transfers were not motivated by the thought of death, and were not made in contemplation of death. Opinion The question raised by the pleadings is whether the decedent made transfers of property to his wife on January 14, 1937, in contemplation of death. The question arises under section 811 (c) (1) (A) of the Internal Revenue Code. The disputed transfers were made by a completed inter vivos gift, and the pleadings do not present a question regarding the effectiveness of the delivery of the property to the wife in transferring complete title and ownership of the property to her. The transfers were absolute and presently effective. The respondent does not contend otherwise. The transfers were made more than two years prior to the death of the decedent so that there is no statutory presumption here that the *33 gifts were made in contemplation of death under section 811 (c) (1) (A). The petitioner has presented evidence under its burden of proving that the respondent erred in his determination that the value of the property transferred during the life of the decedent is includible in his gross estate. The evidence includes testimony of decedent's daughter, of Miss Ives, who was a close friend of Mrs. Jacobsen, and of the decedent's and Mrs. Jacobsen's attorney. The testimony of these witnesses appears to be credible, and we find no reason to disbelieve the testimony of these witnesses which stands uncontradicted and unrefuted. Giving the weight which we deem proper to the entire evidence before us, the ultimate findings of fact which are above set forth have been made. We have given full consideration to the meaning of the phrase in the pertinent statutory provision "in contemplation of death," and to the governing principles which must be carefully applied, as are set forth in United States v. Wells, 283 U.S. 102, and Allen v. Trust Company of Georgia, 326 U.S. 630, 635, keeping in mind that "The dominant purpose [of the statute] is to reach substitutes for *34 testamentary dispositions and thus to prevent the evasion of the estate tax." Both the donor and the donee have passed away, the donee having predeceased the donor. The always difficult task of determining the subjective facts as to the state of mind of the donor at the time he made the gifts is particularly difficult in this proceeding because the donee has not survived the donor. Furthermore, the respondent sharply contests the petitioner's contentions. The problem is "to detect the dominant motive of the donor in the light of his bodily and mental condition." We have before us evidence that the decedent made the transfers of property to his wife, which were a substantial part of his assets, in concession to her insistent requests for her own financial independence, and upon the suggestion and recommendation of a close friend of the wife, and that the decedent made the transfers with some reluctance after several years of domestic tension over the wife's desire to have property of her own for her independent use and free enjoyment. The motives involved in these transfers were, in the considered judgment of this Court, associated with a purpose to make life pleasanter for the *35 decedent's wife, and, also, the decedent himself, and were not associated with death. There are many decisions of this and other courts which have held that, under similar evidence of motive and purpose, inter vivos transfers of a substantial part of a decedent's assets were not made in contemplation of death. For example, see the following: Harrictte O'Neil Gillette, Executrix v. Commissioner (1950), 182 Fed. (2d) 1010, reversing an unreported Memorandum Findings of Fact and Opinion of this Court [8 TCM 91,]; Dierks, Executor v. United States (1950), 86 Fed. Supp. 832; Estate of Katharine H. Talbott, 42 B.T.A. 1081; Percy B. Eckhart, Executor, 33 B.T.A. 426; Estate of Ralph Owen Howard, 9 T.C. 1192; McGregor v. Commissioner, 82 Fed. (2d) 948; Estate of Genevieve Macauley, 3 T.C. 350, aff'd., 150 Fed. (2d) 847; Daniel J. Gallery, et al., Administrators, 38 B.T.A. 1211. Precedents, however, cannot weigh in the decision of the issue which is before us, even though they illustrate the applications to distinct bodies of evidence in other cases of the principles *36 which are to be applied in arriving at the conclusion of law in the case sub judice, as well as the difficulties in weighing the evidence. See Harriette O'Neil Gillette v. Commissioner, supra. The conclusions reached here with respect to the ultimate facts and the law have been reached only through the process of careful study of the evidence and the exercise of our best judgment in weighing thet evidence in search of the impelling and dominant motive of the decedent. The evidence shows that the decedent was in good health at the time he made the gifts, despite his age, which we have taken into account. We are unable to conclude otherwise from the evidence, notwithstanding the arguments of respondent about contrary inferences. The evidence shows that the decedent's wife pressed the decedent to give her part of his estate in recognition of her contributions to the welfare and living arrangements of the family, and that he made the transfers to satisfy her requests and attitudes. The result of the decedent's action was to dispose of a substantial part of his property during his life to his wife, and the respondent strongly argues that the transfers were in lieu of testamentary *37 disposition. That result is no certain or absolute criterion of the decedent's dominant motive. Harriette O'Neil Gillette v. Commissioner, supra.It is a factor to be scrutinized, of course, and this has been considered. But, opposed to this is the fact that the decedent retained a substantial amount of property; that his living standards were modest; and that in his will, executed when his wife was living, he made provision for his wife. Consideration has been given to the matter of the execution of wills by the decedent and by his wife, but that factor is not entitled to the weight which the respondent urges, in view of the evidence which clearly shows that considerations other than contemplation of death were the dominant motives of the decedent's transfer. See New England Trust Co. v. Commissioner of Corporations and Taxation, 53 N.E. (2d) 1001, 1005; and Anna Ball Kneeland, et al., Executors, 34 B.T.A. 816, 821. The decedent executed several wills during his life, and we cannot conclude from the fact that he made a will close to the time of the transfers that his predominant purpose in making the transfers was in contemplation of death and *38 to achieve a testamentary disposition. The respondent has made a second contention on brief to the effect that the disputed transfer comes within (B) of subsection (c) (1) of section 811, on the theory that the decedent retained possession or enjoyment of the transferred property. Respondent admits that there was no reservation by the decedent of any right to income of the securities which he transferred, but he suggests that the wife used te income for household expenses and that the decedent thereby retained enjoyment of the property. There is no evidence to support this contention, and it is rejected. Our conclusion of law is that the respondent erred in including the property given to the wife in 1937 in the gross estate of the decedent, and in increasing the amount of the estate tax thereby, upon his determination that the property is includible in the decedent's estate under section 811 (c) (1) (A) and (B) of the Code. Because of petitioner's concession to a small increase in the value of the gross estate, not here involved, and a matter of a credit for the State estate tax paid Decision will be entered under Rule 50.